**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROSETTA SURRELL,
    *Plaintiff-Appellant,*

v.

CALIFORNIA WATER SERVICE CO., a
corporation; YVONNE PILE-COX,
    *Defendants-Appellees.*

No. 06-15400

D.C. No.
CV-04-02143-FCD/
JFM

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, District Judge, Presiding

Argued and Submitted
December 5, 2007—San Francisco, California

Filed March 11, 2008

Before: Dorothy W. Nelson and Stephen Reinhardt,
Circuit Judges, and Louis F. Oberdorfer,*
Senior District Judge.

Opinion by Judge Oberdorfer

*The Honorable Louis F. Oberdorfer, Senior United States District
Judge for the District of Columbia, sitting by designation.

**COUNSEL**

Daniel L. Mitchell, Law Office of Daniel L. Mitchell, Alameda, California, for the appellant.

Raymond F. Lynch, Amy L. Keyser, Hanson Bridgett Marcus Vlahos & Rudy, LLP, San Francisco, California, for the appellee.

---

## OPINION

OBERDORFER, Senior District Judge:

Rosetta Surrell brought numerous federal and state discrimination and retaliation claims against her employer, California Water Service Co. ("Cal Water"), and her former supervisor, Yvonne Pile-Cox ("Cox"). The district court granted summary judgment to both Defendants. We affirm.

## I. BACKGROUND

Cal Water is a wholly owned subsidiary of California Water Service Group, a privately owned company that provides water service to businesses and consumers in communities throughout California. Surrell, an African-American woman, began employment as a customer-service representative in the company's Stockton District in January 1997. Cox was the Office Manager and Surrell's supervisor. Surrell's job duties included answering phones, performing data entry, filing records, and dispatching work orders. In 1998, Surrell bid on and received, based on her seniority at Cal Water, a higher-level customer-service position. At all times during her employment with Cal Water, she was a member of the Utility Workers Union of American AFL-CIO, which had a collective-bargaining agreement with Cal Water. Under this agreement, vacant or newly created positions were open for bid by current employees and filled based on seniority. But temporary jobs that would not last longer than 120 days were filled at management's discretion, without regard to seniority. The agreement also provided that Cal Water could submit employees to drug testing if they appeared impaired.

In April 2001, Surrell was in a car accident. Because of her injuries, she had difficulty lifting her hands above her head and could not do household chores. She was taking Vicodin at this time. Cal Water granted her a leave of absence. She had expected to return to work by July 1, 2001, but the pain persisted, and Cal Water granted her further medical leave through the rest of the year.

In early 2002, when Surrell was still on medical leave, Cox announced that she was going to retire, creating an opening for the Office Manager position. This vacancy was posted within the company in February 2002, and several Cal Water employees applied. After the top two candidates declined to accept an offer for the position, Cal Water looked for outside applicants. Surrell requested and was allowed to be included in the process.

On April 4, 2002, while her application for Office Manager was pending, Surrell returned to work. Her doctor had provided a letter stating that she was able to do a full workload without restrictions, but she was still taking numerous prescription drugs as needed for her injuries.

Also in April 2002, Surrell requested but was denied training for the Head Cashier position, which was to be available for five days in June 2002 while the Head Cashier was on vacation. (The parties refer to this on-the-job training for another position as "cross-training.") At the time of Surrell's request, Cal Water had a substantially increased workload because it was changing to a new computer system and had just taken over a new billing operation. Accordingly, there was no formal cross-training program in place; employees would simply informally train with other employees if they had time after completing their job. In June 2002, Surrell learned that Cal Water was cross-training Denise Holt for the position. Cox testified that Cal Water chose to train Holt for the position because she had already informally learned a portion of that job on her own and therefore required less training

than Surrell would have required. Holt, a younger, white co-worker with less seniority than Surrell, filled in at the Head Cashier position for this five-day period. In July 2002, the Union filed a grievance, stating that Surrell "was unfairly passed over for opportunities in crosstraining after repeatedly requesting to be crosstrained." Excerpts of Record ("ER") at 196. The complaint was denied at the first stage of the grievance process, and it was not taken to arbitration.

Also in July 2002, Cal Water chose not to promote Surrell to the Office Manager position. Instead, Cal Water hired Regina Coe, a younger, white, female applicant. Coe was a trained accountant with a B.S. in Business Administration and had five years of management and accounting experience.

On August 22, 2002, supervisors, including Cox, observed Surrell at work and agreed that she appeared to be impaired and that her speech was slurred. Surrell had taken some of her prescription drugs, including Fiorinal, the night before, and admitted that her speech was slurred at work. Cal Water ordered her to submit to a drug test. The test showed the presence of Surrell's prescribed medication for her back injuries as well as the presence of cannabinoids (chemical compounds present in marijuana). Accordingly, under the collective-bargaining agreement, Cal Water offered Surrell two choices: either be discharged or enter a drug-rehabilitation program. Surrell chose to enter the rehabilitation program and returned to work in early October 2002.

Tragically, Surrell's son was murdered in December 2002. She took some time off and believed that she was ready to work again at the end of January 2003. During this period, she received some Demerol injections, was taking Valium each night to go to sleep, and was also taking Soma and Zanaflex.

She returned to work on January 29, 2003. When co-workers asked her about her son, she started crying, shaking, and suffered a migraine headache. She had taken Valium the

night before and then took a Vicodin at work. Observing Surrell in what appeared to them to be an impaired state, Surrell's supervisors had Surrell drug tested again. The test returned positive for several substances. Surrell asserts that these substances were associated with her prescribed medications. Cal Water then placed her on administrative leave with full salary for approximately the next 10 months.

On July 9, 2003, Surrell filed a discrimination charge with the California Department of Fair Employment and Housing (the "State Employment Department"), alleging various discrimination claims against Cal Water. The State Employment Department provided her with a right-to-sue letter and advised her that she could obtain a federal right-to-sue letter from the Equal Employment Opportunity Commission (EEOC).

On December 9, 2003, Surrell informed Cal Water that she was unable to return to work due to her medical condition. She concluded that she was too emotionally scarred at that time and would not have been able to function. Surrell remained employed but on an unpaid leave of absence during which she received health benefits.

On July 6, 2004, Surrell filed suit in California state court against Cal Water and Cox, alleging numerous federal and state employment-discrimination claims based on race, sex, and age. On October 13, 2004, Defendants removed the suit to federal district court. On February 27, 2006, the district court granted summary judgment to Cal Water and Cox on all claims. *Surrell v. Cal. Water Serv. Co.*, No. 04-2143, 2006 U.S. Dist. LEXIS 7326 (E.D. Cal. Feb. 27, 2006). Cal Water and Cox later unsuccessfully moved for fees against Surrell.

Surrell brought this appeal of the district court's grant of summary judgment.

## II.  DISCUSSION

### A.  Standard of Review

We review de novo a district court's grant of summary judgment. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Conclusory statements without factual support are insufficient to defeat a motion for summary judgment. *Nat'l Steel Corp. v. Golden Eagles Ins. Corp.*, 121 F.3d 496, 502 (9th Cir. 1997). A district court's exclusion of evidence at summary judgment will stand unless the court abused its discretion. *Id.*

### B.  Surrell's Claims

Surrell appeals the district court's grant of summary judgment on her (1) discrimination, retaliation, and hostile-work-environment claims under Title VII and 42 U.S.C. § 1981 (2003); and (2) physical-disability discrimination claim under the California Fair Employment and Housing Act.

#### 1.  Title VII and 42 U.S.C. § 1981 Claims

**[1]** Title VII prohibits employers from discriminating against an individual based on race. 42 U.S.C. § 2000e-2(a)(1) (2003). Similarly, § 1981 prohibits discrimination in the "benefits, privileges, terms and conditions" of employment. 42 U.S.C. § 1981(b); *Metoyer v. Chassman*, 504 F.3d 919, 935 (9th Cir. 2007). When analyzing § 1981 claims, we apply "the same legal principles as those applicable in a Title VII disparate treatment case." *Id.* at 930 (quoting *Fonseca v. Sysco Food Servs. of Ariz. Inc.*, 384 F.3d 840, 850 (9th Cir. 2004)). Title VII, however, "requires the plaintiff to exhaust administrative remedies, such as filing a claim with the EEOC . . . , before seeking a private action for damages, whereas § 1981 has no such requirement." *Id.* at 947 n.11 (Bea, J., dis-

senting) (citing 42 U.S.C. § 2000e-5(f)). We discuss first the Title VII exhaustion question and then reach the merits of both Surrell's Title VII and § 1981 claims.

### a.  Exhaustion of Title VII Claims

A person seeking relief under Title VII must first file a charge with the EEOC within 180 days of the alleged unlawful employment practice, or, if, as here, the person initially instituted proceedings with the state or local administrative agency, within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). If the EEOC does not bring suit based on the charge, the EEOC must "notify the person aggrieved" that she can file suit. *Id.* § 2000e-5(f)(1). The notice is accomplished through a right-to-sue letter. Once a person receives an EEOC right-to-sue letter, she has 90 days to file suit. *Id.* § 2000e-5(f)(1).

**[2]** Although Surrell never filed a charge directly with the EEOC, her charge filed with the State Employment Department is deemed filed with the EEOC pursuant to a worksharing agreement between the two entities. *See Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1476 (9th Cir. 1989) (charge filed with the State Employment Department "is deemed to have been received by the EEOC on the same day . . . because under the worksharing agreement the [State Employment Department] was an agent of the EEOC for the purpose of receiving charges").

The State Employment Department also provided her with a state right-to-sue letter, which notes that "[i]f a federal notice of Right-To-Sue is wanted, the [EEOC] must be visited to file a complaint within 30 days of this [notice] or within 300 days of the alleged discriminatory act, whichever is earlier." ER at 32. Surrell, however, never obtained a federal right-to-sue letter from the EEOC. Cal Water and Cox contend that this failure bars her claim. Surrell responds that obtaining the state right-to-sue letter suffices for her suit to proceed. This

issue raises two questions: (1) whether the federal right-to-sue letter is an absolute *jurisdictional* prerequisite, or whether it is simply a *general requirement* for a Title VII claim that may be excused in particular cases; and (2) if simply a general requirement, whether that requirement should be excused here.

[3] Failure to obtain a federal right-to-sue letter does not preclude federal jurisdiction. In *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), the Supreme Court held that, although Title VII requires that plaintiffs timely exhaust administrative remedies, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." The Supreme Court explained that Title VII's timeliness provision is entirely separate from Title VII's jurisdictional provisions and "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.* at 394. Because Title VII's provisions requiring notice of the right to sue are similarly separate from the jurisdictional provisions, the right-to-sue requirement is similarly non-jurisdictional. *See Temengil v. Trust Territory of Pacific Islands*, 881 F.2d 647, 654 (9th Cir. 1989) ("Pursuit of administrative remedies is a condition precedent to a Title VII claim. The requirement, however, is not jurisdictional.") (citations omitted); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (explaining that "Plaintiff must file a discrimination charge with the Equal Employment Opportunity Commission and receive a right-to-sue letter from the Commission," and that, under *Zipes*, "[f]ailure to observe these requirements renders a suit subject to dismissal *in the absence of any equitable consideration to the contrary*") (emphasis added); *see also Pietras v. Bd. of Fire Comm'rs*, 180 F.3d 468, 474 (2d Cir. 1999) ("Every circuit before us that has faced the question has held that a plaintiff's failure to obtain a notice-of-right-to-sue[ ]letter is not a jurisdictional

bar, but only a precondition to bringing a Title VII action that can be waived by the parties or the court.").

**[4]** The general requirement of a federal right-to-sue letter remains, however. Courts typically look to the relative fault of the parties to determine whether the failure to obtain a right-to-sue letter should be excused. *See, e.g.*, *Pietras*, 180 F.3d at 474 (allowing claim to proceed where EEOC erroneously refused to send right-to-sue letter and plaintiff was diligent in seeking it). Such an inquiry could pose significant problems for Surrell, who was specifically notified by the State Employment Department that she needed to visit the EEOC to obtain a federal right-to-sue letter. *See, e.g.*, *Roman v. Cty. of Los Angeles*, 85 Cal. App. 4th 316, 326 (Cal. App. 2000) (barring Title VII claim because "the [state] right-to-sue notice specifically advised appellant that if he wanted a federal right-to-sue notice he had to file a complaint with the EEOC"). On the other hand, courts have also concluded that once a plaintiff is *entitled* to receive a right-to-sue letter (as Surrell was once the EEOC did not timely act on her properly filed charge), it makes no difference whether the plaintiff actually obtained it. *See, e.g.*, *Moore v. City of Charlotte*, 754 F.3d 1100, 1104 n.1 (4th Cir. 1985) ("Entitlement to the letter, without actual receipt of it, is sufficient to support federal jurisdiction."). Indeed, courts have reached that conclusion in this precise context where worksharing agreements exist between the federal and state agencies. *See Burke v. Cornerstone*, No. 07-889, 2007 U.S. Dist. LEXIS 76662, at *5-6 (D. Conn. Oct. 12, 2007) ("[A]s the purposes of the exhaustion requirement—to provide notice to parties charged with violations and to facilitate voluntary compliance should the investigating agency find merit in the complaint—have been served by the state proceeding, the Court does not view the omission of the actual right-to-sue letter as grounds for dismissal."); *but cf. Jones v. Grinnell Corp.*, 235 F.3d 972, 975 (5th Cir. 2001) ("federal-state cooperation does not extend to the exhaustion of administrative remedies"). This is a persuasive approach, which we now adopt. We hold that where, as here, a plaintiff

is entitled to receive a right-to-sue letter from the EEOC, a plaintiff may proceed absent such a letter, provided she has received a right-to-sue letter from the appropriate state agency. Thus, Surrell's claims may proceed.

### b.  Merits of Title VII and 42 U.S.C. § 1981 Claims

Typically, we apply the familiar *McDonnell Douglas* burden shifting framework for Title VII and § 1981 claims. *Metoyer*, 504 F.3d at 930 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). A plaintiff may alternatively proceed by simply producing "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer." *Id.* at 931. Here, the parties and the court below applied the *McDonnell Douglas* framework; we do so as well.

**[5]** Under this framework, the plaintiff first must establish a prima facie case of discrimination or retaliation. *Id.* at 931 n.6. To do so through indirect evidence, the plaintiff must show that (1) she is a member of a protected class; (2) she applied for a job for which she was qualified; (3) she was rejected; and (4) the position remained open and the employer sought other similarly-qualified employees. *McDonnell Douglas Corp.*, 411 U.S. at 802.

**[6]** If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory or retaliatory conduct. *Metoyer*, 504 F.3d at 931 n.6. If the employer articulates a legitimate reason for its action, "the presumption of discrimination drops out of the picture, and the plaintiff may defeat summary judgment by satisfying the usual standard or proof required . . . under Fed. R. Civ. P. 56(c)." *Id.* (quoting *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006)). The plaintiff may then offer evidence that "the employer's proffered nondiscriminatory reason is merely a pretext for discrimination." *Dominguez-Curry*

*v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005).

Surrell raises three types of claims under Title VII and 42 U.S.C. § 1981: (1) discrimination (failure to promote and failure to cross-train); (2) retaliation; and (3) hostile work environment. We discuss each in turn.

## (1)   Discrimination Claims

### (a)   Failure to promote

**[7]** Surrell contends that Cal Water and Cox discriminated against her based on her race when they promoted Regina Coe to Office Manager. As an initial matter, Cox had no role in Surrell's application for the promotion, so Cox is entitled to summary judgment on this claim. Even assuming that Surrell sets forth a prima facie case as to Cal Water, she fails to show that Cal Water's articulated reason for promoting Coe—*i.e.*, that Coe was more qualified—was pretextual.

Coe was a trained accountant and received a bachelor-of-science degree in business administration from California State University in 2000. She had five years of management and accounting experience, and she worked for approximately one year as a City Administrator. Coe also had experience with labor relations and demonstrated strong communication skills. She was ranked first by all interview panel members. Surrell stated that "[Coe] was not as well qualified as I was to manage the Stockton Office; I understood the policies and procedures; I knew what each job in that office required." ER at 560. Surrell, however, lacked Coe's management experience, which was particularly suited to the Office Manager position. Surrell raises three unavailing points in response.

First, Surrell argues that Cal Water and Cox provided evidence regarding the Office Manager selection decision only in their summary-judgment reply papers in the district court,

improperly denying her the opportunity to respond. Surrell testified at deposition, however, that her discrimination claim was limited to the failure to cross-train for the Head Cashier position; the Office Manager claim did not surface until her opposition to Cal Water's and Cox's summary-judgment motion, leaving them to reply at that point. The district court nonetheless considered this claim—to *Surrell's* benefit—"for the sake of completeness." *Surrell*, 2006 U.S. Dist. LEXIS 7326, at *5 n.3. She is responsible for her alleged inability to respond.

Second, Surrell contends that the district court improperly excluded "her statistical analysis of Cal Water's failure to promote minorities." Surrell's Br. at 24. The statistical analysis consists of two, unsigned pages of typed notes without any authentication as to author or content. Even Surrell's counsel admitted that Surrell did not verify or authenticate it. Supplemental Excerpts of Record ("SER") at 80 ("[Y]ou're right about the fact that other than gathering it, she did not verify it or authenticate it."). Accordingly, the district court's exclusion of this evidence was not an abuse of discretion.

Finally, Surrell contends that the district court improperly ignored her testimony that she "had never seen any black people promoted to the office management positions since [she has] been in the Stockton Office." Surrell's Br. at 24; ER at 559. We agree that the district court should have considered this statement, which was based on Surrell's personal knowledge. Nonetheless, without more, this general statement is insufficient for a trier of fact to conclude that Cal Water's articulated reason for hiring Coe instead of Surrell was pretextual: Coe's five years of management experience significantly distinguish her from Surrell as the most-qualified candidate for the management position.

### (b) Failure to cross-train

Surrell also contends that Cal Water and Cox discriminated against her by failing to cross-train her for the Head Cashier

position. Surrell sets forth a prima facie case on this claim, stating that Cox refused to train her for the position and that Defendants cross-trained Denise Holt, a younger, white woman with less seniority.

**[8]** Defendants have produced a non-discriminatory reason for not training Surrell. Cox testified that Cal Water chose to train Holt for the position because she had already done a portion of that job that she had learned on her own and therefore required less training than Surrell would have required. This was particularly relevant because Cal Water's time for training was limited because it was in the process of converting to a new computer system and taking over a new billing account.

Surrell contends that "Cal Water offered no material evidence that it was engaged in the claimed conversion such that training could not be accomplished," Surrell's Br. at 27, and that Cox's testimony regarding the conversion is inadmissible hearsay. But deposition testimony is ordinarily hearsay at trial, not in a summary-judgment motion. *Orr v. Bank of Am.*, 285 F.3d 764, 779 n.27 (9th Cir. 2002); Fed. R. Civ. P. 56(c) (allowing deposition testimony in summary-judgment motion). Moreover, Surrell admitted that management told her that the increased office workload due to the conversion was the reason Cal Water did not cross train her, and she admitted that the conversion caused the increased workload. Surrell fails to provide sufficient evidence that this reason was pretextual. In any event, the collective-bargaining agreement explicitly states that "[t]emporary jobs that cannot be predetermined to last longer than one hundred twenty (120) days will be filled at management's discretion"—without regard to seniority. ER at 315. Knowing that it could have Holt fill in for this position at its discretion, management could fairly decide—because of concerns about limited time—to cross-train her instead of Surrell.

## (2)  Retaliation Claim

[9] Surrell contends that Cal Water and Cox retaliated against her by drug testing her after she filed her union grievance alleging that Cal Water's failure to cross-train her for the Head Cashier position was discriminatory. Title VII makes it unlawful "for an employer to discriminate against any of [its] employees or applicants for employment . . . because [she] has opposed any practice." 42 U.S.C. § 2000e-3(a). Section 1981 prohibits "racial discrimination in taking retaliatory action." *Manatt v. Bank of Am. N.A.*, 339 F.3d 792, 798 (9th Cir. 2003) (citation omitted).[1] To establish a prima facie case of retaliation, a plaintiff must prove (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two. *Bergene v. Salt River Project Agric. Improvement and Power Dist.*, 272 F.3d 1136, 1140-41 (9th Cir. 2001). Once established, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions; at that point, the plaintiff must produce evidence to show that the stated reasons were a pretext for retaliation. *Id.*

[10] Even assuming that Surrell has established a prima facie case, Cal Water has presented a legitimate, non-retaliatory reason for conducting the drug tests: Surrell appeared to be an impaired state. In the first instance, on August 22, 2002, supervisors observed her and concurred that she appeared to be in such a state and that she was slurring her speech. Surrell admits that she was slurring her speech. The test results showed the presence of both prescription medications and illegal cannabinoids in her system. Following

---

[1]The Supreme Court is currently considering whether retaliation claims lie under § 1981. *See Humphries v. CBOCS West*, 474 F.3d 387 (7th Cir. 2007) *cert. granted*, 2007 U.S. LEXIS 9079 (U.S. Sept. 25, 2007) (No. 06-1431). Because Surrell's (perhaps soon-to-be nonexistent) retaliation claim fails on the merits, *Humphries'* preclusion of such a claim will not alter the result here.

her return to work after completing the drug-treatment program, several supervisors again observed her to be impaired, and she again tested positive for a number of substances.

**[11]** Surrell fails to raise a triable issue regarding whether Cal Water's reasons for drug testing her were a pretext for retaliation. She contends that the district court failed to consider her statement that "it was clear to [her] that the tests were flawed" because she had "never smoked cigarettes[—]least of all marijuana" and "never consumed alcohol in [her] lifetime." ER at 563. Other than this unsubstantiated statement, however, Surrell presents no evidence contradicting the results of the drug tests. More importantly, even if the tests *were* flawed, Cal Water had ample basis to conduct the tests in the first place: Surrell does not dispute that she appeared impaired and was taking drugs. Accordingly, Surrell cannot establish that this legitimate basis for testing was actually a pretext to retaliate.

### (3)   Hostile-Work-Environment Claim

Surrell also claims that Cal Water and Cox subjected her to a hostile work environment based on comments Cox made to her from 1998 to 2002. On at least one occasion, Cox confronted Surrell in front of a customer about failing to perform an aspect of her job. Cox also accused Surrell, in front of a customer and co-worker, of failing to pay attention to her job and, in turn, causing the company to lose money. Surrell asserts that this accusation was based on paperwork that did not belong to her. Also, on more than one occasion, Cox told Surrell that she was too slow with her work.

**[12]** To establish a prima facie case for a hostile-work environment claim, Surrell must raise a triable issue of fact as to whether (1) the defendants subjected her to verbal or physical conduct based on her race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to

alter the conditions of her employment and create an abusive working environment. *Manatt*, 339 F.3d at 798.

**[13]** Surrell cannot reach the first step: she presents no evidence that Cox's comments were based on race. These comments were all performance related. Moreover, the alleged comments were not sufficiently severe or pervasive to sustain a hostile-work-environment claim. To resolve such a claim, courts consider all the circumstances, including the frequency of the allegedly discriminatory conduct, its severity, and whether it unreasonably interferes with an employee's work performance. *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). The foregoing considered, Surrell's hostile-work-environment claim fails.

### 2. California-Fair-Employment-and-Housing-Act Claim

**[14]** Finally, Surrell contends that the district court improperly granted summary judgment on her physical-disability discrimination claim under the California Fair Employment and Housing Act, Cal. Gov't Code §§ 12900-12996 (2002). Under that Act, an employer must reasonably accommodate disabled employees. *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 257 (2000). Although Cal Water and Cox concede that the district court erroneously concluded that Surrell failed to exhaust administrative remedies under the Act, this error is immaterial because her claim lacks merit. Every time that Surrell claimed she was unable to work, Cal Water provided her with a leave of absence. Further, Surrell admits that she did not know of any accommodation that Cal Water could have provided for her claimed physical disability. Accordingly, this claim also fails.

### III.   CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Cal Water and Cox.