NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 24 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| OMAR BIBI, | No. 23-15367 |
| Plaintiff-Appellant, | D.C. No. 3:21-cv-04670-EMC |
| v. | MEMORANDUM[*] |
| VxL ENTERPRISES, LLC, et al., | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Submitted April 4, 2024[**]
Pasadena, California

Before: R. NELSON, VANDYKE, and SANCHEZ, Circuit Judges.

Appellant Dr. Omar Bibi ("Dr. Bibi"), a U.S. citizen of Tunisian descent, is a Caucasian Arab licensed physician. Dr. Bibi was contracted to provide medical services at a San Quentin field hospital during the summer of 2020. He entered a

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

contract with Daniel & Yeager, LLC ("D&Y"), a locum tenens or temporary staffing agency, to work at VxL Enterprises, LLC's ("VxL"), collectively ("Defendants"), field hospital under the direction of its Chief Medical Officer, Dr. Andre Pennardt. Dr. Bibi alleges that Dr. Pennardt made several racially derogatory remarks to him. He complained about that behavior. Before he complained, however, Defendants decided to end their relationship with Dr. Bibi for poor performance. Dr. Bibi sued, as relevant here, for violations of 42 U.S.C. § 1981. The district court granted VxL's motion to dismiss claims against it and D&Y's motion for summary judgment on the § 1981 retaliation claim against it. We have jurisdiction to review those judgments, 28 U.S.C. § 1291, and affirm.

1. Section 1981 ensures that "[a]ll persons . . . have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). This statute "offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

Dr. Bibi contends that he had a contractual relationship with VxL because he acted as its subcontractor. Dr. Bibi cites a single email that he asserts establishes a contractual relationship between him and VxL. But that email was sent by a third

23-15367

party, not by VxL. The only contract that Dr. Bibi entered that was related to his work in the prison hospital was with D&Y. Considering this "in the light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), an email from a third party is not enough to establish a contractual relationship between Dr. Bibi and VxL. Additionally, Dr. Bibi cites no cases concluding that § 1981 reaches the relationship between subcontractors and their principals. Because there is no evidence of a contractual relationship between Dr. Bibi and VxL, or any other contract under which Dr. Bibi alleges he has the right to bring a § 1981 claim against VxL, we affirm the district court's dismissal of all claims against VxL.

2. To survive summary judgment on a § 1981 claim, a plaintiff must first establish a prima facie case of retaliation. *See Metoyer v. Chassman*, 504 F.3d 919, 931 n.6 (9th Cir. 2007), *abrogated on other grounds by Nat'l Ass'n of Afr. Am.-Owned Media v. Charter Commc'ns, Inc.*, 915 F.3d 617 (9th Cir. 2019). Plaintiffs can establish retaliation by proving "(1) [they] engaged in a protected activity; (2) [they] suffered an adverse employment action; and (3) there was a causal connection between the two." *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008).

Though the parties agree that the first two elements are met, Dr. Bibi failed to establish the third. No reasonable jury could find a causal connection between Dr.

Bibi's workplace complaint and his termination. The record shows that D&Y decided to terminate Dr. Bibi before he complained about his treatment at work. There were extant complaints that Dr. Bibi (1) regularly showed up late to his shifts, (2) failed to properly follow security protocols, (3) declined to wear the required protective gear, and (4) refused to treat a patient with urgent complaints about chest pain. There was thus no causal relationship between a protected activity and an adverse employment outcome.

Causation also fails under § 1981 when, as here, "adverse actions that [a party] alleges" were "the next step in a continuing course of action that began before he filed the internal complaint." *Hollowell v. Kaiser Found. Health Plan of the Nw.*, 705 F. App'x 501, 504 (9th Cir. 2017) (unpublished). This reflects the difficulty in establishing that a plaintiff was fired for complaining when the decision to fire him was made *before* he complained. Time flows in only one direction. Here, Dr. Bibi's termination concluded a chain of events starting with emails discussing whether Dr. Bibi should be terminated, continuing with more emails on the logistics of how the termination should proceed, and concluding with Dr. Bibi's termination. D&Y's decision to terminate its contract with Dr. Bibi came before he complained. No reasonable juror could find causation sufficient to establish a prima facie case of retaliation.

**AFFIRMED.**