**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 11 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PAULINA BUHAGIAR, | No. 22-16232 |
| Plaintiff-Appellant, | D.C. No. 2:19-cv-05761-JJT |
| v. | |
| WELLS FARGO BANK, N.A., | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Submitted June 11, 2024**

Before: WALLACE, FERNANDEZ, SILVERMAN, Circuit Judges,

Plaintiff-Appellant Paulina Buhagiar appeals pro se from the district court's

order granting summary judgment to Wells Fargo Bank, N.A. (Wells Fargo) on her

claims of discrimination and retaliation pursuant to (i) Title VII of the Civil Rights

Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, (ii) 42 U.S.C. § 1981, and (iii)

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, as well as her claim of intentional infliction of emotional distress (IIED).[1]  We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's grant of summary judgment de novo "to determine whether, viewing all evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).

As the parties are familiar with the factual and procedural history of this case, we need not recount it here.  We affirm.

1.    *Ineffective assistance of counsel.*  On appeal, Buhagiar requests that

---

[1] In her Notice of Appeal, Buhagiar indicated that she was also appealing Wells Fargo's original Bill of Costs.  After Buhagiar filed her Notice of Appeal, the district court entered a Judgment on Taxation of Costs against Buhagiar for $1, 931.15 based on Wells Fargo's *revised* Bill of Costs.  Generally, "a party may demand judicial review of a cost award only if such party has filed a proper motion within the [seven]-day period specified in [Federal] Rule [of Civil Procedure] 54(d)(1)." *Walker v. California*, 200 F.3d 624, 626 (9th Cir. 1999).  Buhagiar did not file a response or objections to either Bill of Costs.  While this court has discretion to consider a challenge to the cost award notwithstanding the waiver, *see id.*, on appeal Buhagiar has not cited any authority or made any argument as to why the Judgment on Taxation of Costs is improper.  Accordingly, we conclude this argument is waived. *See, e.g.*, *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived."); Fed. R. App. P. 28(a)(8)(A) ("The appellant's brief must contain . . . the argument, which must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies[.]").

the panel "review and set aside the judgment and ruling of the lower court based on the mishandling of [her] case by [her] previous lawyer." We understand Buhagiar to be making an ineffective assistance of counsel argument. "Generally, a plaintiff in a civil case has no right to effective assistance of counsel." *Nicholson v. Rushen*, 767 F.2d 1426, 1427 (9th Cir. 1985). "This rule is based on the presumption that, unless the indigent litigant may lose his physical liberty if he loses the litigation, there is generally no right to counsel in a civil case." *Id.* Accordingly, we conclude that Buhagiar is not entitled to reversal of the district court's summary judgment based on ineffective assistance of counsel grounds.

2.      *Discrimination claims.* The district court properly granted summary judgment to Wells Fargo on Buhagiar's discrimination claims under Title VII, § 1981, and the ADA.

We first turn to the Title VII and § 1981 discrimination claims. Under Title VII, an employer may not "discriminate against an individual with respect to [her] . . . terms, conditions, or privileges of employment because of her race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Similarly, § 1981 prohibits racial discrimination in the "benefits, privileges, terms, and conditions" of employment. 42 U.S.C. § 1981(b). "When analyzing § 1981 claims, we apply the same legal principles as those applicable in a Title VII disparate treatment case." *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008)

3

(internal quotation marks and citation omitted).

"Typically, we apply the familiar *McDonnell Douglas* burden shifting framework for Title VII and § 1981 claims." *Id.* at 1105. Under the *McDonnell* burden-shifting framework, the plaintiff must show that "(1) the plaintiff belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 691 (9th Cir. 2017). "[W]hen the plaintiff demonstrates his prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action." *Id.* "If the defendant meets this burden, then the plaintiff must then raise a triable issue of material fact as to whether the defendant's proffered reasons . . . are mere pretext for unlawful discrimination." *Id.* (internal quotation marks and citation omitted).

Since the parties do not dispute that Buhagiar is part of a protected class based on her race or that she suffered an adverse employment action when she was terminated, we focus our analysis on whether she was performing according to Wells Fargo's legitimate expectations. In arguing that she was performing her job adequately, Buhagiar relies on the fact that she advanced from Operations

Processor 2 to Operations Processor 3, which she refers to as a promotion to a higher-level position, and that she did not have any "poor performance write-ups" or issues with behavior or tardiness when she was in the role of Operations Processor 2. But such evidence has no bearing on how she was performing in her role as Operations Processor 3. Indeed, as the district court observed, fatal to Buhagiar's prima facie Title VII and § 1981 discrimination claims is that Badon, her former supervisor, testified that Buhagiar made substantial errors and failed to improve with instruction in her position as Operations Processor 3; Badon's log reflects Buhagiar's performance deficiencies. In light of Badon's log documenting Buhagiar's subpar performance, Buhagiar's belief that she was performing well is not sufficient to create a genuine dispute of material fact.[2] *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("However, an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact."). Therefore, we conclude that the district court properly granted summary judgment to Wells Fargo on the Title VII and § 1981 discrimination claims.

---

[2] Since Buhagiar fails to create a genuine dispute of fact as to whether she was performing satisfactorily in her role as Operation Processor 3, we need not consider whether her placement on "mail room duty" was an adverse action or whether the lack of assigning Buhagiar's coworker, who also exhibited performance issues, to "mail room duty" satisfied the "similarly situated" requirement.

Next, we turn to the ADA discrimination claim. "To set forth a prima facie disability discrimination claim [under the ADA], a plaintiff must establish that: (1) he is disabled within the meaning of the ADA; (2) he is qualified (i.e., able to perform the essential functions of the job with or without reasonable accommodation); and (3) the employer terminated him because of his disability." *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018), citing *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). "Under the ADA an employee is considered disabled if he is regarded by his employer as having a physical or mental impairment that substantially limits one or more major life activities." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006), citing 42 U.S.C. § 12102(1)(A) & (C).

Taking the evidence in the light most favorable to Buhagiar, we conclude that the record does not support an inference that Wells Fargo perceived Buhagiar as disabled under the ADA.[3] Buhagiar did not notify Wells Fargo of any disability or need for disability-related accommodations under the ADA. Although Buhagiar sent a Return to Work Release to Badon from the hospital, the Release provides no restrictions with respect to Buhagiar's return to work. When Badon asked how Buhagiar was feeling following the hospitalization, Buhagiar informed Badon that

---

[3] Given that we conclude that Wells Fargo did not perceive Buhagiar as disabled, we need not address whether Buhagiar is qualified to perform the job or whether she was terminated because of her alleged disability.

6

she was "still sick" and did not indicate that she may have a disability. Therefore, we conclude that the district court did not err in granting summary judgment to Wells Fargo on Buhagiar's ADA discrimination claim.

3. *Retaliation claims.* The district court properly granted summary judgment to Wells Fargo on Buhagiar's retaliation claims under Title VII, § 1981, and the ADA.

Title VII makes it unlawful "for an employer to discriminate against any of [its] employees . . . because [she] has opposed any practice." *Surrell*, 518 F.3d at 1107, quoting 42 U.S.C. § 2000e–3(a). Retaliation claims are also actionable under § 1981 and the ADA. *See Manatt v. Bank of Am.*, *NA*, 339 F.3d 792, 795 (9th Cir. 2003) (section 1981 retaliation claims); *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (ADA retaliation claims). "To establish a prima facie case of retaliation, a plaintiff must prove (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two." *Surrell*, 518 F.3d at 1108. "The burdens of persuasion and proof are the same as those in *McDonnell*." *Ruggles v. California Polytechnic State Univ.*, 797 F.2d 782, 784–85 (9th Cir. 1986).

The district court considered Buhagiar's assignment to mailroom duties and her termination, and concluded that Buhagiar's retaliation claims arising out of

7

both adverse employment actions failed as a matter of law. For her Title VII and § 1981 retaliation claims arising out of assignment to mailroom duties, the district court determined that Buhagiar made a prima facie case of retaliation based on temporal proximity; she was assigned to mailroom duties within a day of complaining to Richardson. At the next stage of the *McDonell* framework, however, the district court properly concluded that Wells Fargo articulated a legitimate, non-discriminatory reason for assigning Buhagiar to process mail: she was making substantial errors when performing other job duties. Buhagiar failed to show that Wells Fargo's reason was pretextual. *See Curley v. City of N. Las Vegas*, 772 F.3d 629, 634 (9th Cir. 2014) ("The timing . . . does nothing to refute the [employer's] legitimate explanations for the adverse employment action, making summary judgment appropriate even if [plaintiff] has established a prima facie case."). As for Buhagiar's ADA retaliation claim arising out of assignment to mailroom duties, the district court properly determined that she could not make a prima facie case because her hospitalization occurred after she was assigned.

With respect to the second adverse employment action—Buhagiar's termination—the district court concluded that Buhagiar did not establish a prima facie Title VII or § 1981 retaliation claim because she could not show a causal nexus as Buhagiar was terminated roughly nine months after complaining to Richardson. The district court's determination that such a lapse of time, without

8

more, does not support an inference of retaliation is consistent with our precedent. *See Villiarimo*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("[I]n order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression." (internal quotation marks and citation omitted)). The district court further concluded that Buhagiar could not make a prima face ADA retaliation claim because she never requested accommodation from Wells Fargo for a disability or medical issue. As we already discussed, Buhagiar's allegation that she requested reasonable accommodations after her hospital visit is unsupported by the record. Without Buhagiar making a request under the ADA, it logically follows that Buhagiar cannot show that any subsequent action by Wells Fargo was in retaliation for protected activity under the ADA.

The district court's summary judgment to Wells Fargo on the Title VII, § 1981, and ADA retaliation claims was proper.

4.    *IIED claim.*   The district court properly granted summary judgment to Wells Fargo on Buhagiar's IIED claim. To prevail on a claim for IIED under Arizona law, a plaintiff must prove: (1) that the defendant committed "extreme" and "outrageous" conduct; (2) that the defendant intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct; and (3) that severe emotional distress occurred as a result of the defendant's conduct. *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005),

9

quoting *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (1987). "The trial court determines whether the acts at issue are sufficiently outrageous to state a claim for relief; however, if reasonable minds could differ about whether the conduct is sufficiently outrageous, the issue should be decided by a jury." *Johnson v. McDonald*, 3 P.3d 1075, 1080 (Ariz. Ct. App. 1999).

Buhagiar's IIED claim arises out of her allegations that (i) she was subject to humiliation from her co-workers and supervisor; (ii) she was demoted to mailroom duties after complaining; (iii) Wells Fargo ignored the adverse effects the working conditions were having on her and; (iv) she was not directed to the proper channels to receive accommodations after her hospitalization. "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995). Even accepting as true all of Buhagiar's allegations, it cannot be said Wells Fargo's conduct "go[es] beyond all possible bounds of decency, and [would] be regarded as atrocious and utterly intolerable in a civilized community." *Johnson*, 3 P.3d at 1080 (internal quotation marks and citation omitted).

Accordingly, the district court properly granted summary judgment to Wells Fargo on Buhagiar's IIED claim.

10

**AFFIRMED.**