**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES RICHARD STIEFEL,
             *Plaintiff-Appellant,*

v.

BECHTEL CORPORATION; BECHTEL
CONSTRUCTION COMPANY,
             *Defendants-Appellees.*

No. 09-55764

D.C. No.
3:08-cv-00037-
H-WMC

OPINION

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted
May 5, 2010—Pasadena, California

Filed November 1, 2010

Before: John T. Noonan, Richard R. Clifton and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Clifton

**COUNSEL**

Stephen Feliz Danz, Stephen Danz & Associates, Los Angeles, California; Marcus Jackson (argued), Jackson Employment Litigation, A.P.C., San Marcos, California, for plaintiff-appellant James Richard Stiefel.

Thomas M. McInerney (argued), Ogletree, Deakins, Nash, Smoak & Stewart, P.C., San Francisco, California, for defendants-appellees Bechtel Corporation and Bechtel Construction Company.

## OPINION

CLIFTON, Circuit Judge:

James Richard Stiefel appeals from orders of the district court dismissing his employment discrimination claims against Bechtel Construction Company under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Stiefel contends that Bechtel discriminated against him because of a disabling work-related injury and failed to accommodate that disability ("pre-termination claims") and then laid him off to retaliate against him for seeking accommodation ("termination claims"). Stiefel also alleges that Bechtel thereafter discriminated and retaliated against him by refusing to rehire him and accommodate his disability ("post-termination claims"). The district court granted a motion to dismiss Stiefel's pre-termination and termination claims and granted summary judgment in favor of Bechtel on Stiefel's post-termination claims.

The district court dismissed Stiefel's pre-termination and termination claims on the ground that Stiefel failed to file a charge with the Equal Employment Opportunity Commission ("EEOC") within 30 days after receiving a right-to-sue letter from the California Department of Fair Employment and Housing ("DFEH"). *See* 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1626.7(a). We reverse that order because Stiefel's DFEH charge was deemed filed with the EEOC pursuant to a "Work-sharing Agreement" between the DFEH and the EEOC. *See Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1104 (9th Cir. 2008).

The district court granted summary judgment in favor of Bechtel on Stiefel's post-termination claims because it found that Stiefel never gave Bechtel an opportunity to rehire him by attending enough roll call meetings at the union hiring hall to advance to the top of his union's out-of-work list. We affirm that order because Stiefel has failed to demonstrate either that he applied to be rehired or that it would have been futile to do so. *See Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1179 n.24 (9th Cir. 2003).

## I. Background

The ADA forbids discrimination in employment on the basis of disability, requires employers to reasonably accommodate their employees' disabilities, and prohibits retaliation against those who oppose acts prohibited by the ADA. 42 U.S.C. §§ 12112(a), 12112(b)(5), 12203. Stiefel alleges that Bechtel violated each of these directives in its actions leading up to, relating to, and following his termination.

Stiefel was employed as an ironworker by Bechtel[1] at the San Onofre Nuclear Generating Station ("the power plant") from May 2004 until he was laid off on March 3, 2006. Five weeks before he was laid off, Stiefel injured his left hand while on the job. After a Bechtel doctor put his hand in a splint and released him to work with no restrictions, Stiefel complained to John Patterson, a supervisor for power plant majority owner Southern California Edison, that his hand injury prevented him from performing his normal duties. Bechtel then arranged for Stiefel to see an orthopedist, who wrapped Stiefel's injured hand in a cast and cleared him for light duty with no use of his left hand. According to Stiefel, Bechtel assigned him to light duty for only two days beginning February 14, 2006, and then began making him perform

---

[1] Stiefel does not appeal the district court's ruling that another named defendant, Bechtel Corporation, was not Stiefel's employer and therefore not subject to his ADA claims.

tasks requiring both hands, attempting to make him quit. He alleges that Bechtel subsequently laid him off in a "medical reduction in force," which would result in cost savings to Bechtel under its workers' compensation insurance plan. Stiefel further alleges that, since his termination, Bechtel has passed him over for jobs because he is not "100% healed."

### A. Pre-Termination Claims

In his original complaint, Stiefel alleged that after his injury, Bechtel discriminated against him and harassed him because of his disability and failed "to take prompt corrective action to address the discriminatory behavior." Stiefel attests that after he delivered to his supervisors a doctor's note describing his disability, they retaliated against him for seeking accommodations by forcing him to perform work incompatible with his disability. He asserts that he was qualified for many existing positions that were compatible with his disability, but that Bechtel refused to reasonably accommodate his disability by assigning him to those positions.

### B. Termination Claims

Stiefel's original complaint also characterizes Bechtel's termination of his employment as illegal discrimination based on his disability. Stiefel complains that Bechtel laid him off in retaliation for having involved Patterson in securing medical attention for his injury and for actively seeking accommodation for his disability immediately after his hand injury was treated.

### C. Post-Termination Claims

After the district court dismissed his termination and pre-termination claims, Stiefel filed an amended complaint alleging that Bechtel violated the ADA in refusing to rehire him, despite promises that certain Bechtel employees made at the time of his termination to help him get back to work when his

cast came off. As evidence of Bechtel's unwillingness to rehire him, Stiefel points to statements by Bechtel employees that he would not be allowed to return to work without a full medical release. Stiefel acknowledges that Bechtel accommodated other disabled employees but maintains that Bechtel has discriminated against him because of his disability by refusing to rehire him and accommodate his disability by offering him a light-duty position. Stiefel further asserts that Bechtel's alleged refusal to rehire him was motivated out of a desire to retaliate against him for having requested accommodation.

Pursuant to a collective bargaining agreement with Local 229 of the International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers Union ("the Union"), of which Stiefel was a member, Bechtel hired iron-workers based on referrals from the Union. The Union referred workers to Bechtel from the top of its out-of-work list. Workers moved to the top of the out-of-work list by attending roll call meetings at the hiring hall.

After being laid off, Stiefel delayed adding his name to the Union's out-of-work list for three or four months. After joining the list, he never advanced to the top because he missed roll calls, which he said was because of his need for medical treatment, including doctor appointments, surgery, and physical therapy. He also argues that attending roll calls "would have been an exercise in futility" in light of statements made by Bechtel employees that the company would not rehire Stiefel without a restriction-free medical release.

### D.    Procedural History

Stiefel first filed suit in state court on June 21, 2006, after receiving a right-to-sue letter from the DFEH on May 8, 2006. The right-to-sue letter informed Stiefel that he needed to file a complaint with the EEOC within 30 days of receiving the letter from DFEH if he wanted a federal right-to-sue notice. Bechtel removed the case to federal district court, where Stie-

fel's ADA claims were dismissed without prejudice because he did not have a right-to-sue letter from the EEOC, due to his failure to file a claim with the EEOC. Stiefel did not appeal that decision but filed the current action in state court on October 11, 2007, after filing new administrative charges with the DFEH in December 2006, and with the EEOC on March 16, 2007. Bechtel again removed the action to federal court.

The district court dismissed Stiefel's termination and pre-termination claims because Stiefel had failed to file a charge with the EEOC within 30 days of receiving notice of the DFEH's first termination of proceedings. Subsequently, the district court granted summary judgment in Bechtel's favor on Stiefel's post-termination claims because the court concluded that Bechtel did not refuse to hire him, let alone do so in violation of the ADA, because the Union never referred Stiefel to Bechtel for hiring. Stiefel timely appealed.

## II. Discussion

"We review . . . *de novo* a district court's dismissal and grant of summary judgment." *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1218 (9th Cir. 2009) (citation omitted).

### A. Dismissal of Pre-Termination and Termination Claims

[1] In dismissing Stiefel's pre-termination and termination claims, the district court ruled that he failed to timely file an administrative charge with the EEOC. The ADA adopts the "procedures set forth in [42 U.S.C.] §§ 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9" (corresponding to sections 705, 706, 707, 709, and 710 of the Civil Rights Act of 1964). 42 U.S.C. § 12117(a). Thus an ADA plaintiff is normally bound by the requirement that

> in a case of an unlawful employment practice with respect to which the person aggrieved has initially

instituted proceedings with a State or local agency . . . such charge shall be filed [with the EEOC] by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier.

42 U.S.C. § 2000e-5(e)(1); *see Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006); 29 C.F.R. § 1626.7(a).

**[2]** Stiefel filed a complaint with the DFEH in April 2006 and received a right-to-sue letter from the California agency on May 8, 2006. The letter informed Stiefel that, if he desired a federal right-to-sue notice, he must file a complaint with the EEOC within 30 days of receiving the letter from DFEH. Stiefel did not file a complaint with EEOC until some 312 days later, on March 16, 2007. In dismissing the suit on this basis, the district court disregarded a right-to-sue letter that Stiefel received from the EEOC sometime within 180 days[2] of filing his March 16, 2007 charge.[3]

**[3]** Stiefel's claims should not have been dismissed on the ground that he failed to timely file a charge with the EEOC. Pursuant to "Worksharing Agreements" between the DFEH and the EEOC in effect when Stiefel filed his DFEH charges, the State agency was the agent of the EEOC "for the purpose of receiving . . . charges." Worksharing Agreement Between

---

[2]The date on this 2007 EEOC right-to-sue letter is illegible.

[3]The district court also disregarded a second complaint, similar to the first, that Stiefel filed with the DFEH in December 2006, as well as a second right-to-sue letter he received from the DFEH dated December 19, 2006. Although Stiefel states that he filed an EEOC complaint within 30 days of this second DFEH complaint, the only EEOC complaint submitted to the district court is dated March 16, 2007, some 87 days later.

California Department of Fair Employment and Housing and Equal Employment Opportunity Commission for Fiscal Year 2006 ("2006 Worksharing Agreement"), at ii; see 2007 Worksharing Agreement, at ii (same).[4] Under such an agreement, a charge filed with the DFEH "is deemed to have been received by the EEOC on the same day." *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1476 (9th Cir. 1989), *quoted in Surrell*, 518 F.3d at 1104; *see* 29 C.F.R. § 1626.10(c) ("Charges received by one agency under the [worksharing] agreement shall be deemed received by the other agency for purposes of § 1626.7.").

**[4]** The EEOC's failure to issue a right-to-sue letter on a dual-filed charge is no bar to a suit under the ADA. We recently held in a Title VII case that "where, as here, a plaintiff is entitled to receive a right-to-sue letter from the EEOC, a plaintiff may proceed absent such a letter, provided [ ]he has received a right-to-sue letter from the appropriate state agency." *Surrell*, 518 F.3d at 1105. The procedural analysis of *Surrell* applies to the instant suit under the ADA. *See Walsh*, 471 F.3d at 1038.

**[5]** As with the DFEH charge in *Surrell*, by filing a charge with the California department, Stiefel was entitled to a federal right-to-sue letter because of the Worksharing Agreement between the state agency and the EEOC. As in the present case, Surrell received a right-to-sue letter warning that "[i]f a federal notice of Right-To-Sue is wanted, the [EEOC] must be visited to file a complaint within 30 days of this [notice] or within 300 days of the alleged discriminatory act, whichever

---

[4]The agreement also provides that the DFEH "shall take all charges alleging a violation of . . . the ADA where both the [DFEH] and EEOC have mutual jurisdiction, or where EEOC only has jurisdiction, so long as the allegations meet the minimum requirements of [the] Act." 2006 Worksharing Agreement, at ii; *see* 2007 Worksharing Agreement, at ii (same). Apparently the DFEH failed to fulfill its obligations under the Worksharing Agreement to "make every effort to forward all dual filed charges to the [EEOC] within two working days of receipt." *Id.*

is earlier." *Surrell*, 518 F.3d at 1104. Surrell never filed a separate charge with the EEOC nor received a right-to-sue letter from that agency. Nevertheless, we held in *Surrell* that "once a plaintiff is *entitled* to receive a right-to-sue letter (as Surrell was once the EEOC did not timely act on her properly filed charge), it makes no difference whether the plaintiff actually obtained it." *Id.* at 1105. The same is true for an ADA plaintiff.

[6] As such, we hold that when a plaintiff files a disability discrimination complaint with a state agency acting, with respect to ADA complaints, as an agent of the EEOC, and receives a right-to-sue letter from the state agency, thereby becoming entitled to an EEOC right-to-sue letter, the plaintiff need not file a separate complaint with the EEOC nor receive an EEOC right-to-sue letter in order to file suit. Stiefel became entitled to an EEOC letter "once the EEOC did not timely act on [his] properly filed charge," *Id.* at 1105; that is, on November 4, 2006—180 days after his DFEH charge was deemed filed with the EEOC. 42 U.S.C. § 2000e-5(f)(1).

[7] After receiving an EEOC right-to-sue letter or becoming eligible for one by the Commission's inaction, a plaintiff generally has 90 days to file suit. *Id.* "[T]he 90-day filing period is a statute of limitations subject to equitable tolling in appropriate circumstances." *Valenzuela v. Kraft*, 801 F.2d 1170, 1174 (9th Cir. 1986). Stiefel's 90-day window for filing the present suit was tolled pending his first suit, until the district court issued its final judgment on July 16, 2007. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349-54 (1983) (tolling the 90-day statute of limitations during the pendency of a related class action that gave the employer notice of the nature of the claim). Stiefel filed the current action on October 11, 2007, fewer than 90 days after that judgment. His suit was therefore timely, and it should not have been dismissed.

### B. Summary Judgment on Post-Termination Claims

The district court granted summary judgment on Stiefel's post-termination claims, reasoning that after Stiefel was laid off, he failed to take the steps necessary to give Bechtel a chance to rehire him. We agree.

Bechtel's collective bargaining agreement with the Union generally required that Bechtel hire ironworkers based on referrals from the Union. Stiefel admitted that he did not attend roll calls for several months after being laid off and thereafter missed roll calls "many, many times" for personal reasons. Because he remained at the bottom of the out-of-work list, he was never referred to Bechtel through the normal Union referral process and Bechtel never had a chance to hire him.

Stiefel argues that attending the roll calls would have been futile, citing statements by Bechtel employees that Bechtel would not rehire Stiefel until he could obtain a medical release with no work restrictions. Most of these statements were inadmissible hearsay, as the speakers who made them were not involved with or responsible for hiring decisions. *Cf.* Fed. R. Evid. 801(d)(2)(D). The only apparent exceptions were statements by John Fanto, manager of Bechtel's safety department, related by David Peabody, another ironworker who had approached Fanto about rehiring Stiefel. According to Peabody, Fanto stated that "it was Bechtel's policy . . . when someone was injured, not to rehire them until they had a doctor's release," and that such a release must state "that there are no restrictions," because "there's no light duty at [the power plant]." Bechtel does not dispute that this evidence is admissible as an admission of a party opponent. Under the facts of this case, however, this evidence was not sufficient to defeat Bechtel's motion for summary judgment.

[8] We have held in the Title VII context that an employee can prevail in an employment discrimination action without

applying for the job if he can show that he "was a potential victim of unlawful discrimination" and that he "would have applied for the job had it not been for those discriminatory practices." *Gutowsky v. County of Placer*, 108 F.3d 256, 260 (9th Cir. 1997) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367-68 (1977)) (alteration omitted). In such cases, a court may conduct a "subjective evaluation" into whether applying would have been futile, *Bouman v. Block*, 940 F.2d 1211, 1222 (9th Cir. 1991), in which the plaintiff must demonstrate a "reasonable belief" that the employer "was so biased that resort to its procedures would have been futile." *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1179 (9th Cir. 2003). This futile gesture doctrine, born of our Title VII jurisprudence, applies to ADA plaintiffs because "Congress specifically intended that *Teamsters*' 'futile gesture' reasoning be applied to ADA claims." *Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1136 (9th Cir. 2002) (citing H. Rep. No. 101-485(II) at 82-83 (1990) ("The Committee intends for this doctrine to apply to this title."); S. Rep. No. 101-116 at 43 (1989)).

Nonetheless, Stiefel's "futile gesture" argument fails because it was not supported by his own sworn deposition testimony. Stiefel testified that he was kept away from the hiring hall by personal obligations and schedule conflicts. He confirmed this twice under direct questioning. He said nothing about not attending the meetings because of a belief that it would have been futile.

Moreover, Stiefel admitted that Bechtel accommodated the disabilities of other employees. An employer may be liable for discriminating against a single employee in spite of its own generally followed anti-discrimination policy, but Stiefel's knowledge of the company's practice of accommodating disabilities undercuts the reasonableness of his claimed belief that it would have been futile to try to get rehired through the Union referral process.

**[9]** Where a plaintiff does not identify other victims of the discrimination he alleges and testifies only to logistical reasons for his own decision not to seek rehiring, it cannot be said that "an application would have been a useless act serving only to confirm [his] knowledge that the job he wanted was unavailable to him." *Teamsters*, 431 U.S. at 367. Stiefel has not offered sufficient "facts that would support a reasonable belief that [Bechtel] was so biased that resort to its [hiring] procedures would have been futile." *Holly D.*, 339 F.3d at 1179.

Stiefel points out that an addendum to the collective bargaining agreement allows Bechtel to "request manpower from the Union[ ] by identifying . . . the names of previously employed individuals." He argues that Bechtel should have rehired him through this alternate channel, and that Bechtel knew he wanted to be rehired because he submitted personal history questionnaires.[5] But Stiefel was not the only ironworker who wanted to be hired. The ironworkers who presented themselves for hiring by attending the roll calls wanted to be hired, too. Stiefel does not explain why Bechtel was required affirmatively to favor him by asking for him by name even though he had not been referred by the Union in the usual way.

The evidence indicates, moreover, that Bechtel did request Stiefel by name from the Union on August 15, 2006, and that Stiefel did not appear for employment in response to the request. The district court cited what it described as "undisputed evidence" in the form of a requisition form sent by Bechtel to the Union specifically requesting several ironworkers by name, including Stiefel. Stiefel now argues that the document was fabricated, but that was an argument that should have been made to the district court. More to the point, Stiefel himself testified that the Union's business agent called

---

[5]According to Stiefel, a personal history questionnaire initiates a background check necessary for employment with Bechtel.

him about a job at the power plant in August 2006. Although he did not recall the agent mentioning the requisition from Bechtel, that testimony, including the timing of that call, corroborates the requisition form and supports the district court's conclusion, based on undisputed evidence, that Bechtel did make a request for Stiefel by name.

Unfortunately, as Stiefel testified, the Union agent then told him to "forget it" because Stiefel did not have a "hundred percent" medical release. But the Union agent's advice cannot be attributed to Bechtel. Even if Stiefel did not appear for hiring based on the agent's perception that Bechtel required a "hundred percent" release, that is not itself sufficient, in light of other evidence described above, to persuade a reasonable jury that Stiefel held a reasonable belief that Bechtel had such a policy or would not have hired Stiefel and accommodated his disability if Stiefel had in fact appeared.

## III.   Conclusion

**[10]** For the foregoing reasons we reverse the order dismissing Stiefel's termination and pre-termination claims, we affirm the order granting summary judgment on his post-termination claims, and we remand for further proceedings consistent with this opinion.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED.**