**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TAYLOR SCOTT, an individual, *Plaintiff-Appellant*, | No. 16-56200 |
| | D.C. No. 3:15-cv-00550-JLS-WVG |
| v. | |
| GINO MORENA ENTERPRISES, LLC, a California limited liability company; DOES, 1–50, inclusive, *Defendants-Appellees.* | OPINION |

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted February 7, 2018
Pasadena, California

Filed April 27, 2018

Before: Consuelo M. Callahan and Jacqueline H. Nguyen, Circuit Judges, and Joseph F. Bataillon,[*] District Judge.

Opinion by Judge Callahan

---

[*] The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

## SUMMARY[**]

### Employment Discrimination

The panel affirmed in part and reversed in part the district court's summary judgment in favor of the defendant on claims under Title VII of the Civil Rights Act of 1964.

The panel held that, under 42 U.S.C. § 2000e-5(f)(1), the 90-day period for filing a civil action, following exhaustion of administrative remedies, begins when the aggrieved person is given notice of the right to sue by the Equal Employment Opportunity Commission, rather than when the person becomes eligible to receive a right-to-sue notice from the EEOC. Accordingly, the plaintiffs' claims based on her first administrative charge were timely.

The panel held that the plaintiff's claims based on a second administrative charge were untimely, but she could base her Title VII claims on the defendant's alleged acts occurring after she filed her first administrative charge to the extent she could show such acts were part of a single hostile work environment claim.

The panel affirmed the district court's grant of summary judgment only as to claims based on discrete discriminatory or retaliatory acts occurring after the plaintiff filed her first administrative charge. The panel otherwise reversed and remanded.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Armond M. Jackson (argued) and Neil Pedersen, Pedersen Law APLC, Irving, California, for Plaintiff-Appellant.

Daniel E. Gardenswartz (argued) and Leah S. Strickland, Solomon Ward Seidenwurm & Smith, San Diego, California, for Defendant-Appellee.

**OPINION**

CALLAHAN, Circuit Judge:

Taylor Scott appeals from the grant of summary judgment in favor of her former employer, Gino Morena Enterprises, LLC ("GME"). Scott sued GME alleging sexual harassment and retaliation under state law. The parties stipulated to the dismissal of Scott's state law claims and Scott's filing of an amended complaint asserting claims under Title VII of the Civil Rights Act of 1964. In granting GME's motion for summary judgment, the district court concluded that Scott's Title VII claims were time-barred and that Scott failed to meet her burden of establishing a basis for equitable tolling.

Under Title VII, an aggrieved person wishing to bring a claim against an employer must exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission (the "EEOC") or a qualifying state agency and receiving a right-to-sue notice. 42 U.S.C. § 2000e-5. The primary issue in this appeal is whether, under 42 U.S.C. § 2000e-5(f)(1), the 90-day period for filing a civil action begins when the aggrieved person becomes

eligible to receive a right-to-sue notice from the EEOC or when the person is actually given a right-to-sue notice.

We hold that the 90-day period referenced in 42 U.S.C. § 2000e-5(f)(1) begins when the aggrieved person is given notice of the right to sue by the EEOC. We also hold that Scott's Title VII claims may be based on alleged acts occurring after she filed her first administrative charge only to the extent such acts are part of a single unlawful employment practice. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). We thus affirm in part and reverse in part.

## I.  Factual Background

Scott began working for GME in April 2011 at a barbershop located on the United States Marine Corps Base Camp Pendleton, where she was responsible for providing customers with haircuts and selling hair products. Scott alleges Judy Lifesy (a GME Manager) and Katie Shepler (a GME General Manager) sexually harassed and retaliated against her. Specifically, Scott alleges that after she turned down Lifesy's sexual advances, Lifesy began treating Scott poorly. Examples of Lifesy's alleged abusive behavior include pushing Scott out of the way to ring up customers, turning down the temperature of the shop to 30 degrees, turning up the volume of the television in the shop, yelling at Scott in front of customers, throwing Scott's work tools in the sink, and blaming Scott for computer problems.

On November 13, 2013, while Scott was still employed by GME, she filed a charge with the California Department of Fair Employment and Housing (the "DFEH") after speaking with DFEH representative Karen Rice. Scott's handwritten notes from her telephone conversation with Rice indicate "365 days" in the margin next to "Dept. of Fair

Employment & Housing" and "w/in 30 days an investigator will call to determine if actionable." The notes also indicate "statue [sic] of lim 300 Days" in the margin next to "EEOC – Federal coverage (DFEH will send their filing to the EEOC)." Six days later, the DFEH transferred the duty to investigate Scott's charge to the EEOC pursuant to a worksharing agreement between the DFEH and the EEOC.

On November 25, 2013, the DFEH issued a letter giving Scott notice of her right to sue. The letter stated the DFEH had closed Scott's case "for the following reason: Administrative Dismissal – Waived to Another Agency." The right-to-sue letter also explained that: (1) a civil action under California's Fair Employment and Housing Act (the "FEHA") "must be filed within one year from the date of this letter"; (2) Scott's DFEH charge "is dual filed with the [EEOC]" and Scott "ha[s] a right to request EEOC to perform a substantial weight review of [DFEH's] findings . . . within fifteen (15) days of . . . receipt of this notice"; (3) "[a]lthough DFEH has concluded that the evidence and information did not support a finding that a violation occurred, the allegations and conduct at issue may be in violation of other laws"; and (4) Scott "should consult an attorney as soon as possible regarding any other options and/or recourse [she] may have regarding the underlying acts or conduct." (Emphasis omitted). Scott testified that she read the DFEH right-to-sue letter.

Scott alleges that on December 22, 2013, approximately one month after she obtained her first right-to-sue letter, Lifesy issued Scott's first warning but described it as her

second warning.[1]    Scott then decided to leave GME's employ.

Scott did not follow up on her first administrative charge until October 15, 2014, when she contacted Karen Rice from the DFEH and received contact information for the EEOC. That same day, Scott spoke with someone at the EEOC, who confirmed that Scott's complaint was being processed and gave Scott a claim number.

Scott hired a lawyer and filed a second charge with the DFEH on November 17, 2014. The second charge recounted Scott's allegations leading to her first DFEH charge, and then stated:

> After I filed my complaint and received my right to sue letter, Lifesy and Shepler gave me a final warning (although this was the very first warning I received while I was employed by GM).    After the unfair treatment, harassment and retaliation and the immediate warning after I filed my DFEH complaint, I was unable withstand [sic] any further retaliatory harassing and unfair treatment and left GMs [sic] employ knowing that they were setting me up for termination.

Scott received a second DFEH right-to-sue letter on the same date she filed the second charge. The letter stated that Scott's case was being closed because an immediate right-to-sue notice was requested and that the DFEH would take no further action on the charge. The letter also stated: "To obtain a federal Right to Sue notice, you must visit the U.S.

---

[1] Scott does not allege the reason given for the warning.

Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier."

## II.  Procedural Background

On November 20, 2014, Scott filed a complaint in the Superior Court of California, County of Orange, asserting FEHA claims only.  GME removed the case to federal court under the federal enclave doctrine.  Scott filed a motion to remand the case to state court, arguing she asserted claims under state law only.  The district court denied the motion.

On May 22, 2015, GME filed a motion for judgment on the pleadings, seeking dismissal of the FEHA claims as preempted by the federal enclave doctrine.  After receiving that motion, Scott requested, and obtained, a right-to-sue notice from the EEOC (associated with her first administrative charge).  The notice, which was issued on June 3, 2015, stated that "[m]ore than 180 days have passed since the filing of this charge" and "[t]he EEOC is terminating its processing of this charge."  *Id.*  The notice also stated that Scott's "lawsuit under Title VII . . . **must be filed in a federal or state court *WITHIN 90 DAYS* of . . . receipt of this notice**; or [the] right to sue based on this charge will be lost."

Before Scott filed an opposition to the motion for judgment on the pleadings, the parties filed a joint motion to allow Scott to file a First Amended Complaint (the "FAC") and for GME to withdraw its motion for judgment on the pleadings.  The proposed FAC included only federal claims under Title VII.  The parties' stipulation expressly preserved GME's right to assert defenses to Scott's federal claims, "specifically including any statute of limitations defenses."

The district court granted the joint motion, and Scott filed her FAC.

GME then moved to dismiss the FAC, arguing the Title VII claims were time-barred. In denying the motion, the district court assumed, without deciding, that Scott's Title VII claims were untimely but ruled that Scott might be entitled to equitable tolling and that the issue was not appropriate for resolution on the pleadings.

After the parties subsequently engaged in discovery on the issue of equitable tolling, GME filed a motion for summary judgment. The district court granted the motion, ruling that all of Scott's claims were time-barred and equitable tolling did not apply. Scott timely appealed.

### III.  Standard of Review

We review the grant of summary judgment de novo. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011). "[R]eview is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c)." *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999). The court "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law." *Id.*

### IV.  Discussion

#### A.  Scott's claims based on the first administrative charge are timely

There are effectively two limitations periods for Title VII claims. First, a claimant must exhaust administrative remedies by filing a charge with the EEOC or an equivalent

state agency, like the DFEH, and receiving a right-to-sue letter. 42 U.S.C. § 2000e-5(e)(1); *Jasch v. Potter*, 302 F.3d 1092, 1094 (9th Cir. 2002). The charge must be filed within 180 days after the allegedly unlawful employment practice occurred.**[2]** 42 U.S.C. § 2000e-5(e)(1). Second, after exhausting administrative remedies, a claimant has 90 days to file a civil action. 42 U.S.C. § 2000e-5(f)(1).

Scott filed her first DFEH charge on November 13, 2013. Twelve days later, she received a notice giving her the right to sue under the FEHA and stating that the charge "is dual filed with the [EEOC]."**[3]** Scott did not file her complaint in state court until almost a full year later on November 20, 2014. At that time, she still had not received a right-to-sue notice from the EEOC. On June 3, 2015, the EEOC issued a right-to-sue notice, and two weeks later, the district court

---

**[2]** If the charge is initially filed with a state agency that enforces the state's own anti-discrimination laws, like the DFEH in California, the statutory 180-day rule does not apply. Instead, a Title VII charge must be filed within 300 days after the allegedly unlawful employment practice or 30 days after notice that the state agency has terminated its proceedings under state law, whichever is earlier. 42 U.S.C. § 2000e-5(e)(1).

**[3]** The DFEH "dual filed" Scott's charge with the EEOC pursuant to the Worksharing Agreement Between California Department of Fair Employment and Housing and U.S. Equal Opportunity Commission, Fiscal Year 2013, and FY 2014 Extension of Worksharing Agreement (the "Worksharing Agreement"). *See Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1244 (9th Cir. 2010) ("Under such an agreement, a charge filed with the DFEH 'is deemed to have been received by the EEOC on the same day.'" (quoting *Green v. Los Angeles Cty. Superintendent of Schools*, 883 F.2d 1472, 1476 (9th Cir. 1989)). We grant GME's unopposed motion for judicial notice to the extent it seeks judicial notice of the Worksharing Agreement.

granted the parties' joint motion to allow Scott to amend her complaint to assert her Title VII claims.

There is no dispute that Scott timely filed her first administrative charge. At issue is the second limitations period, and the dispute turns on whether the 90-day period to file a civil action begins when the plaintiff receives a right-to-sue notice from the EEOC *or* 180 days after the charge is filed with the EEOC, regardless of when the EEOC issues a right-to-sue notice. If it is the former, then Scott's claims are not time-barred. If it is the latter, Scott's time to file an action undoubtedly expired before she sued.

The operative provision of the statute states:

> If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

42 U.S.C. § 2000e-5(f)(1). This statutory provision addresses two related, but distinct, ideas: the EEOC's obligation to give notice to the aggrieved person and the person's authorization to file a civil action.

The EEOC's duty to give notice is triggered in two instances: (1) the EEOC's dismissal of the administrative charge, or (2) the EEOC's failure to file a civil action or enter a conciliation agreement within 180 days from the filing of the charge (or the expiration of time periods referenced in provisions not at issue here).[4] If either of these triggering events occurs, the EEOC "shall so notify the person aggrieved." 42 U.S.C. § 2000e-5(f)(1). The corresponding regulation requires the EEOC's notice to state that the claimant may bring an action "within 90 days from receipt of such authorization." 29 C.F.R. § 1601.28(e).

The statute does not expressly state when the EEOC must give such notice. However, it clearly contemplates the giving of notice sometime after 180 days have expired from the date the charge is filed.[5] 42 U.S.C. § 2000e-5(f)(1); *see*

---

[4] Section 2000e-5(f)(1) refers to the "period of reference under subsection (c) or (d) of this section." Those subsections govern when state or local enforcement proceedings are pending before a claimant files a charge with the EEOC, which is not at issue here. 42 U.S.C. § 2000e-5(c), (d). Based on the sentence structure of this statutory provision, the phrase "whichever date is later" refers to whichever date is later between either 180 days from the filing of the charge or the expiration of the "period in reference under subsection (c) or (d)."

[5] The regulations state that the EEOC *may* issue a right-to-sue notice before 180 days have expired from the filing of the charge if (1) the claimant requests a right-to-sue notice and (2) the EEOC determines it is probable that it will be unable to complete its administrative processing of the charge within 180 days. 29 C.F.R. § 1601.28(a)(2). "However, courts are split on the validity of this regulation in view of the express

*also* Ming W. Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2012) ¶ 16:151 ("To protect aggrieved individuals from undue delay, the EEOC must issue a right-to-sue letter upon the potential plaintiff's request anytime *after 180 days* after the charges were filed.") (citing 29 C.F.R. § 1601.28(a)(1)).

The language from § 2000e-5(f)(1) addressing the right to file a civil action may be broken down into two parts: who may file the suit and when it may be filed. Although not at issue here, the statute provides that the "person claiming to be aggrieved" or, if the charge was filed by the EEOC, "the person whom the charge alleges was aggrieved" may file suit. 42 U.S.C. § 2000e-5(f)(1). The portion of the statute addressing the time to file a civil action—the key issue in this case—is similarly straightforward. The person claiming to be aggrieved may file a civil action "within ninety days after the giving of such notice." *Id.* The terms "such notice" could refer only to the notice (identified a few words earlier in the sentence) the EEOC must give upon the occurrence of the specified conditions—i.e., the right-to-sue notice. Thus, under a plain reading of § 2000e-5(f)(1), the 90-day period in which a claimant may file a civil action begins when the EEOC gives a right-to-sue notice.[6]

---

statutory provision (42 USC § 2000e-5(f)(1)) contemplating such action only after 180 days." Ming W. Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2012) ¶ 16:152. Consistent with the regulation, we have held that a plaintiff may file a civil action within the 180-day period if the EEOC has issued a right-to-sue notice. *See Saulsbury v. Wismer & Becker, Inc.*, 644 F.2d 1251, 1257 (9th Cir. 1980).

[6] Although the statute refers to the 90-day clock running from the "giving" of the right-to-sue notice, the corresponding regulation requires

The district court concluded that Scott's "90-day window in which to file suit" opened 180 days after Scott's claim was constructively filed with the EEOC—or, in other words, when Scott became eligible for a right-to-sue notice from the EEOC. To support its conclusion, the court did not cite the statute but, instead, relied on our unpublished decision in *Rucker v. Sacramento County Child Protective Services*, 462 F. App'x 762, 763 (9th Cir. 2011) ("Once the DFEH letter issued, an EEOC charge was deemed filed; Rucker was entitled to a right-to-sue letter from the EEOC 180 days thereafter, or on December 15, 2008.").[7]

*Rucker*, in turn, cites *Stiefel v. Bechtel Corp.*, 624 F.3d 1240 (9th Cir. 2010). The court in *Stiefel* did not consider whether the plaintiff timely filed suit within the 90-day limitations period. Rather, the issue in *Stiefel* was whether the plaintiff satisfied the statute's administrative exhaustion requirement. *See Stiefel*, 624 F.3d at 1245 ("[W]hen a plaintiff files a disability discrimination complaint with a state agency acting, with respect to ADA complaints, as an agent of the EEOC, and receives a right-to-sue letter from the state agency, thereby becoming entitled to an EEOC right-to-sue letter, the plaintiff need not file a separate

---

the right-to-sue notice to state that the aggrieved person is authorized to bring suit "within 90 days from *receipt* of such authorization." 29 C.F.R. § 1601.28(e)(1) (emphasis added). We express no opinion on any potential discrepancy between the statute and the regulation.

[7] Unpublished dispositions of this court are not precedent except as provided in Circuit Rule 36-3(a).

complaint with the EEOC nor receive an EEOC right-to-sue letter in order to file suit.").[8]

Thus, while the issue in this case is whether Scott filed suit too *late*, the issue in *Stiefel* was essentially whether the claimant filed suit too *early*. Nonetheless, in generally describing the time limits for filing suit, the court in *Stiefel* observed that "[a]fter receiving an EEOC right-to-sue letter or *becoming eligible for one by the Commission's inaction*, a plaintiff generally has 90 days to file suit." *Stiefel*, 624 F.3d at 1245 (emphasis added) (citing 42 U.S.C. § 2000e-5(f)(1)). The question is whether this statement in *Stiefel* is dictum or binding precedent. On this point, we have stated:

> A statement is dictum when it is made during the course of delivering a judicial opinion, but . . . is unnecessary to the decision in the case and [is] therefore not precedential. The line is not always easy to draw, however, for where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.

*Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004) (internal quotation marks omitted; alterations in original)

---

[8] In light of our holding in *Stiefel*, Scott is incorrect in suggesting that a claimant must always wait until the EEOC completes its investigation, no matter how long the EEOC takes, before filing a civil suit.

(quoting *Best Life Assur. Co. v. Comm'r*, 281 F.3d 828, 834 (9th Cir. 2002) and *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (Kozinski, J., concurring)); *see also United States v. Vroman*, 975 F.2d 669, 672 (9th Cir. 1992) (holding that a prior opinion was not controlling because it did not involve the same issue).

As the sole authority supporting its statement that the 90-day window to sue begins after a claimant receives an EEOC right-to-sue letter *or* becomes eligible for one, *Stiefel* cited *Surrell v. California Water Serv. Co.*, 518 F.3d 1097 (9th Cir. 2008). 624 F.3d at 1245. Although *Surrell* directly supports the actual holding in *Stiefel*—a plaintiff may file suit if entitled to receive a right-to-sue letter—it does not involve or address (even in dicta) the question of when the 90-day limitations period begins to run. *See Surrell*, 518 F.3d at 1105 ("[W]here, as here, a plaintiff is entitled to receive a right-to-sue letter from the EEOC, a plaintiff may proceed absent such a letter, provided she has received a right-to-sue letter from the appropriate state agency."). In fact, contrary to GME's position, *Surrell* states that an aggrieved person has 90 days to file suit "[o]nce [the] person receives an EEOC right-to-sue letter." *Id.* at 1104 (citing 42 U.S.C. § 2000e-5(f)(1)). The statement from *Surrell* that "it makes no difference whether the plaintiff actually obtained" a notice from the EEOC must be read in context— it makes no difference *for purposes of determining whether a plaintiff has exhausted administrative remedies*. *See id.*

Moreover, the court in *Stiefel* had no occasion to, and thus did not, consider whether the 90-day limitations window begins 180 days after EEOC inaction *even if* the EEOC does not "notify the person aggrieved" as required by § 2000e-5(f)(1). Accordingly, the statement in *Stiefel* cited by *Rucker* is dicta, as it is not necessary to the holding in that

case and does not appear to originate from reasoned consideration.

Because we conclude *Stiefel* is not binding on the question of when the 90-day limitations period begins, it is our task to confront the issue de novo. As discussed above, § 2000e-5(f)(1) plainly ties the 90-day period to the "giving of [the right-to-sue] notice," not eligibility for a right-to-sue notice.

The district court's conclusion is not only contrary to the language of the statute, it arguably would render right-to-sue notices meaningless. If the mere passage of time triggers not only the claimant's *right* to sue (the issue decided in *Surrell* and *Stiefel*) but also the *deadline* by which the claimant must sue (the district court's conclusion), the EEOC's giving of notice after 180 days becomes an idle act.

In urging the panel to follow *Stiefel*'s dictum, GME argues there should not be two different dates for accrual of the cause of action and running of the statute of limitations. In support, GME cites *Reiter v. Cooper*, 507 U.S. 258, 267 (1993): "While it is theoretically possible for a statute to create a cause of action that accrues at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute." But *Reiter* by no means allows us to interpret a statute of limitations in a manner contrary to the statute's plain language.

Moreover, to hold that a plaintiff *may* sue when the EEOC has not acted on a charge for 180 days but is not *required* to do so until after receiving a right-to-sue notice is entirely consistent with the differing purposes of administrative exhaustion and the statute of limitations. The

purpose of the exhaustion requirement "is 'to provide an opportunity to reach a voluntary settlement of an employment discrimination dispute.'" *Jasch*, 302 F.3d at 1094 (quoting *Blank v. Donovan*, 780 F.2d 808, 809 (9th Cir. 1986)). The purpose of a statute of limitations, on the other hand, "is to require diligent prosecution of known claims, thereby providing finality and predictability in legal affairs and ensuring that claims will be resolved while evidence is reasonably available and fresh." *Statute of Limitations*, Black's Law Dictionary (10th ed. 2014).

Although a 180-day waiting period provides a reasonable opportunity for voluntary settlement to occur, at that point the EEOC does not lose jurisdiction to continue investigating the matter and to possibly take action. Even when the EEOC takes more than 180 days to investigate, the employer, already on notice of the charge, will have a fair opportunity to take appropriate steps to preserve evidence while it is reasonably fresh.[9] Thus, allowing an aggrieved person to wait for the agency's investigation to conclude— even if it takes more than 180 days—furthers the purpose of the administrative exhaustion requirement without undermining the purpose of the 90-day limitations period.

GME also argues that "[a] Title VII plaintiff should not have an indefinite limitations period where the EEOC has not acted, particularly where the plaintiff has not shown diligence." We addressed that concern in *Lynn v. W. Gillette, Inc.*, 564 F.2d 1282 (9th Cir. 1977). *Lynn* involved two consolidated cases in which both appellants received a right-to-sue notice more than two years after filing a charge

---

[9] When a charge is filed with the EEOC, the aggrieved person must serve notice of the charge on "the person against whom such charge is made." 42 U.S.C. § 2000e-5(e)(1).

with the EEOC. *Id.* at 1283–84. They both filed suit within 90 days after receiving their respective notices. *Id.* at 1284. The district court concluded that earlier notices to the appellants indicating that conciliation efforts had failed triggered the 90-day limitations period. *Id.* We reversed, holding that "the ninety-day period does not begin until the charging party receives a letter specifically informing him of his right to sue." *Id.* at 1286.[10]

Critically, the court in *Lynn* clarified that its holding "does not imply that a plaintiff's lack of diligence in filing an action must be overlooked":

> [A]n aggrieved party may request a Right to Sue letter from the Commission any time after 180 days following the filing of the charge with the Commission. Particularly where the aggrieved party has consulted counsel and is aware of this right, it becomes inequitable at some point for the employee to delay filing suit. The complainant should not be permitted to prejudice the employer by taking advantage of the Commission's slowness in processing claims or by

---

[10] Consistent with today's holding, the *Lynn* court's interpretation of the 90-day period in § 2000e-5(f)(1) focused on the right-to-sue notice as the triggering event. Although *Lynn* involved a prior version of § 2000e-5(f)(1), that version contained the same key statutory phrase that a civil action may be brought "within ninety days after the giving of such notice." *Lynn*, 564 F.2d at 1286 n.3 (quoting 42 U.S.C. § 2000e-5(f)(1) (Supp. V. 1975)).

procrastinating while being aware that the Commission intends to take no further action.

*Lynn*, 564 F.2d at 1287 (footnote omitted).

We have also recognized that a Title VII action may be barred by the doctrine of laches. In *E.E.O.C. v. Alioto Fish Co.*, 623 F.2d 86, 88–89 (9th Cir. 1980), the court affirmed a grant of summary judgment where the EEOC filed suit 62 months after the employee filed the administrative charge and the employer showed actual prejudice in the form of evidence lost because of the delay.

GME's concern about an indefinitely-open limitations period is thus adequately addressed by existing doctrines and does not justify interpreting § 2000e-5(f)(1) contrary to its plain language.

In the alternative, GME argues the 90-day clock under § 2000e-5(f)(1) is triggered upon the issuance of a right-to-sue notice by *either* the EEOC or the DFEH. The only authority it cites for this proposition is § 2000e-5 and an unpublished district court decision, *Marshall v. City & County of San Francisco*, No. C 14-04409 WHA, 2015 WL 216748, at \*1 (N.D. Cal. Jan. 13, 2015). But the statute makes no reference to a state agency's right-to-sue notice starting the 90-day clock. Instead, the statute describes the duty of "the Commission"—i.e., the EEOC, *see* 42 U.S.C. § 2000e-4(a)—to "notify the person aggrieved" and provides that a civil action may be brought "within ninety days after the giving of such notice." 42 U.S.C. § 2000e-5(f)(1). *Marshall* improperly conflates the concepts of administrative exhaustion and the running of the 90-day limitations period.

Accordingly, the district court erred in concluding that the 90-day clock for Scott to file suit began when she became eligible to receive a right-to-sue notice, rather than when she received her right-to-sue notice from the EEOC.[11]

### B. Scott's claims based on the second administrative charge are untimely, but her claims may be based on acts occurring after her first charge under the continuing violations doctrine

Scott's FAC asserts two claims under Title VII: harassment and retaliation. Both claims are based, at least in part, on conduct that took place before Scott filed her first DFEH charge. To that extent, her claims are timely for the reasons stated in this opinion. But Scott's retaliation claim is based in part on later conduct. Specifically, Scott alleged in her second administrative charge that after she filed her first charge Lifesy and Shepler retaliated against her by issuing a sham warning in an effort to set her up for termination.

Under Title VII, a charge must be filed with the DFEH (and thus "dual-filed" with the EEOC) within 300 days "*after* the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1) (emphasis added). The district court granted summary judgment to GME on Scott's Title VII claims stemming from the second administrative charge because she filed the charge more than 300 days after she left her job on December 22, 2013.

---

[11] Because we hold Scott timely filed her Title VII claims, we need not address her argument that the district court erred in finding no basis for equitable tolling.

Scott does not dispute that her second administrative charge was untimely, and instead claims that it was unnecessary. She argues the continuing violations doctrine allows her to base her Title VII claims on conduct alleged to have occurred *after* she filed her first administrative charge—i.e., retaliation for filing the DFEH charge by issuing a bogus warning which led to Scott quitting her job.

Generally, a Title VII plaintiff may not base a claim on conduct occurring outside the statutory time period for filing a charge (i.e., 300 days before the charge is filed). However, under the continuing violations doctrine, acts that fall outside the statutory time period may be actionable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).

The applicability of the continuing violations doctrine depends on the nature of the plaintiff's claim. "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). Consequently, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability" so long as at least one "act contributing to the claim occurs within the filing period." *Id.* However, Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Id.* at 105. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113.

To the extent Scott's claims are based on discrete acts occurring after she filed her first DFEH charge—for example, retaliation for filing the first administrative charge—the district court did not err in granting summary

judgment.**12** But Scott may base her Title VII claims on GME's alleged acts occurring after she filed her first DFEH charge to the extent she can show such acts are part of a single hostile work environment claim. *See id.* at 117.

## V.  Conclusion

We hold that the 90-day period for an aggrieved person to file a civil action under Title VII begins when the person is given notice of the right to sue from the EEOC, not when the person becomes eligible to receive such notice. We also hold that Scott's Title VII claims may be based on alleged acts occurring after she filed her first DFEH charge only to the extent such acts are part of a single unlawful employment practice. *See Morgan*, 536 U.S. at 117. We affirm the district court's grant of summary judgment only as to Scott's claims that are based on discrete discriminatory or retaliatory acts occurring after Scott filed her first DFEH charge. We otherwise reverse and remand. Costs are to be taxed against the appellee, GME.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

**12** To be clear, a determination that the second administrative charge was untimely does not dispose of Scott's retaliation claim altogether. In support of her retaliation claim, Scott alleges retaliatory conduct occurring before she filed, and generally referenced in, her first administrative charge.